UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER JESSE RAMIREZ,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>  Defendant. | No. 1:22-cv-00445-GSA<br><br>**ORDER DIRECTING ENTRY OF<br>JUDGMENT IN FAVOR OF PLAINTIFF<br>AND AGAINST DEFENDANT<br>COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 16, 18)** |

**I.   Introduction**

Plaintiff Alexander Jesse Ramirez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1] *See* Docs. 16, 18, 19. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.

**II.   Procedural Background[2]**

On January 27, 2020 Plaintiff applied for benefits alleging disability as of September 2, 2019. The Commissioner denied the applications initially on April 10, 2020 and on reconsideration on June 11, 2020.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on January 6, 2021. AR 40–63. On April 26, 2021 the ALJ issued a decision denying Plaintiff's application. AR 13–31. The Appeals Council denied review on February 11, 2022. AR 1–6. On April 15, 2022 Plaintiff filed a complaint in this Court. Doc. 1.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 20.

[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 2, 2019. AR 18. At step two the ALJ found that Plaintiff had the following severe impairments: obesity, below the knee amputation, diabetes mellitus, neuropathy, depression, and history of opioid dependence. AR 18. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: anxiety, hypertension, gout, and PVD (peripheral vascular disease). AR 18–19.

At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19–21. Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. 404.1567(b) with the following restrictions: stand or walk 2 hours total; sit 6 hours total; never climb; occasionally balance, stoop, and crouch; never kneel or crawl; occasionally be exposed to workplace hazards; requires a cane to walk to his workstation; perform simple, routine, repetitive tasks with simple decision making and no more than occasional changes in work setting. AR 21. At step four the ALJ found that Plaintiff could not perform his past relevant work as a warehouse worker or bouncer. AR 25. At step five, based on the VE's

testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: order caller, fastener, document preparer, and info clerk. AR 26. Accordingly, the ALJ found that Plaintiff was not disabled since his alleged onset date of September 2, 2019. AR 26.

## V.     Issues Presented

Plaintiff contends that "ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints."

### A.     Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also*

20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p. An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2. An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.

**B.** **Analysis**

Plaintiff disputes the sufficiency of the RFC to account for his social interaction limitations and his mobility limitations due to an ill-fitting prosthesis.

**1.** **Social Interaction Limitations**

In performing the psychiatric review technique at step three, the ALJ considered four broad areas of mental functioning (the "paragraph B" criteria) and concluded, in relevant part, that Plaintiff had moderate limitations in interacting with others. AR 20. As an initial matter, whether

the RFC is independently supportable in its omission of social interaction limitations (for example, Plaintiff attended certain social events) is not relevant. The Ninth Circuit has held that "where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC."). *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013). This proposition should apply with equal force to the ALJ's own assessment at step three that Plaintiff had moderate social interaction limitations. Having made that finding at step three, the ALJ was required to incorporate the limitation in the RFC.

"This does not necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC. Rather, he is required to account for it in his 'translation.'" *Wascovich*, 2019 WL 4572084 at *5; *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Here, the ALJ stated as follows:

> The claimant has explicitly indicated that he has trouble completing tasks, finishing what he starts and interacting with others (6E). *These limitations are directly accounted for in the residual functional capacity* with the limitation of the claimant to performing simple routine and repetitive tasks, making simple decisions and dealing with only occasional changes at the workplace.

AR 23 (emphasis added).

Yet the RFC does not specify any restriction on interaction with peers, supervisors, or the general public. Defendant nevertheless contends, partially in reliance on *Stubbs-Danielson*, that the limitation to simple and routine tasks encompasses social interaction limitations. Plaintiff disagrees.

Courts have occasionally relied on the Ninth Circuit's opinion in *Stubbs-Danielson* for the proposition that a limitation to simple and routine tasks can serve as a catchall for moderate mental limitations insofar as *Stubbs* held that an ALJ appropriately translated "pace and the other mental

limitations regarding attention, concentration, and adaption" into "the only concrete restrictions available to him," namely a limitation to simple tasks. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Other courts have distinguished the limitations at issue in *Stubbs* from those at issue here. *See, e.g.*, *Ferguson v. Comm'r of Soc. Sec.*, No. 1:18-CV-01585-EPG, 2019 WL 6341034, at *6 (E.D. Cal. Nov. 27, 2019) ("Moreover, even under the Stubbs-Danielson analysis, the ALJ's RFC fails to account for specific concrete work restrictions given by the doctors, including 'The claimant has a fair ability to accept instructions from supervisors and interact with co-workers and the public,' 'The claimant is not able to perform work activities on a consistent basis without special or additional instruction,' and 'The claimant is not able to deal with the usual stress encountered in a competitive work place.' These are concrete restrictions, not statements about mental function generally.'').

The case law in this circuit is split but tends to favor the view that a restriction to simple/routine tasks is not a catchall and does not account for all moderate limitations. *See, e.g. Donna M. v. Saul*, No. 19-CV-03134-DMR, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020) (noting limitation to simple, routine tasks with no public interaction in RFC failed to address other moderate limitations, such as plaintiff's ability to relate to and interact with coworkers, associate with day-to-day work activity, maintain regular attendance in the workplace, and perform work activities on a consistent basis without special or additional supervision); *Macias v. Saul*, No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases, and holding that a limitation to simple/routine tasks does not account for moderate limitations in maintain attendance and completing an 8-hour workday); *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *4 (E.D. Cal. Mar. 27, 2020) (rejecting argument that RFC determination that plaintiff could sustain work involving simple, repetitive tasks adequately captured moderate limitations in maintaining regular attendance, completing a normal workday or work week without interruption

from a psychiatric condition, and handling normal work-related stress); *Christopher G. v. Saul*, No. 2:19-CV-06150-AFM, 2020 WL 2079972, at *6 (C.D. Cal. Apr. 30, 2020); *Flores v. Saul*, No. 1:18-CV-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020); *but see Messerli v. Berryhill*, No. 1:16–cv–00800–SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to "simple repetitive tasks" accounted for moderate limitations in ability to accept instructions, interact with coworkers and the public, maintain attendance, complete a normal workday/workweek without interruptions, and moderate to serious limitations in her ability to deal with work stress); *Calisti v. Colvin*, 2015 WL 7428724, at * 7 (E.D. Cal. Nov. 23, 2015); *Schmidt v. Colvin*, No. 2:12-cv-00016-KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013); See Langford v. Astrue, No. CIV S-07-0366 EFB, 2008 WL 2073951, at *7 (E.D. Cal. May 14, 2008) ("unskilled work . . . accommodated [the claimant's] need for 'limited contact with others'"); *Ramirez v. Commissioner*, No. 1:18-cv-01322-SAB, 2019 WL 4201437, at *13, 18 (E.D. Cal. Sept. 5, 2019) (finding "a limitation to simple and routine tasks adequately encompasses a moderate limitation on social functioning"); *Gann v. Berryhill*, No. 1:17-cv-00325-SKO, 2018 WL 2441581, at *10-12 (E.D. Cal. May 31, 2018) (RFC limitation to "simple, routine tasks" performed in unskilled work "adequately encompasses moderate limitations with social functioning including getting along with peers and responding appropriately to supervisors."); *Menges v. Berryhill*, No. 1:16-cv-01766-BAM, 2018 WL 1567786, at *8 (E.D. Cal. Mar. 30, 2018) ("A restriction to simple, repetitive tasks amply accounts for any moderate/mild limitations in mental or social functioning."); *Henry v. Colvin*, No. 1:15-CV-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) ("the restriction to simple tasks encompasses [the claimant's] moderate limitations with . . . social interaction").

Here, the Court finds the ALJ erred in failing to set forth in the RFC any restrictions on Plaintiff's ability to interact with others despite the fact that the ALJ found a moderate limitation

in social interaction at step three, and despite the fact that the ALJ stated an intention to credit Plaintiff's testimony concerning the same and incorporate a corresponding restriction in the RFC.

Despite cases suggesting a limitation to simple and routine tasks encompasses limitations in social interaction, the regulations strongly suggest social interaction is a distinct and critical work-related function. As this Court has previously observed, "The Social Security regulations treat the abilities to respond appropriately to 'supervision' and to get along with 'coworkers' as aspects of the 'basic mental demands' of unskilled work, noting that the 'substantial loss of ability to meet' any basic mental demand could 'severely limit the potential occupational base.'"). *See Flores*, 2020 WL 509098, at *6.

Although the unskilled jobs at issue here and their corresponding DOT descriptions suggest they may not necessarily require significant social interaction, the hypotheticals to the VE needed to reflect social interaction limitations in order for the VE's testimony to serve as substantial evidence in support of the ALJ's step five finding. *See Alexander v. Saul*, 817 F. App'x 401, 404 (9th Cir. 2020) ("If the hypothetical does not reflect all the claimant's limitations, . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."). Thus, the error was not harmless as it is not clear from the record whether the inclusion of the social interaction limitations in the RFC would have eliminated the available jobs. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (noting that an error is harmless when it is "clear from the record" that the error was "inconsequential to the ultimate non-disability determination).

### 2. **<u>Plaintiff's Ill-Fitting Prosthesis</u>**

Plaintiff also disputes the ALJ's finding that: 1) "once his prosthesis was adjusted, he became able to perform the work outlined below"; 2) "in early 2020, the claimant's activities indicate that he was comfortable in utilizing his prosthesis in pursuing physical activities"; and, 3)

the ALJ's related finding that he could stand and walk 2 hours in an 8 hour day despite his testimony that he was limited to about a 1-2 minute as he was unable to use his prosthetic leg and was awaiting insurance approval for a new one.

Plaintiff emphasizes records documenting continued difficulties with the fit of his prosthetic due to swelling of his residual limb following injury and, conversely, due to shrinking/atrophy of his residual limb, notwithstanding brief periods of relief following padding adjustments. Br. at 4, 8-9. Specifically, Plaintiff emphasizes the following records:

- January 2020, Plaintiff reported movement in the socket of his prosthesis and required more padding. Ar. 318.
- March 2020, he reported falling out of his wheelchair and injuring his stump, and he was observed with edema and tenderness and was advised not to wear his prosthesis due to the swelling. Ar. 316, 512.
- September 2020, he was wearing 15-ply socks but continued to experience "bottoming out of socket." Ar. 685.
- September 2020 complained of complications with the fit of his prosthetic due to limb shrinkage, despite use of padding and thick socks. Ar. 715-16.
- October 30, 2020, and November 30, 2020, Dr. Ayala observed unsteady gait, cane-use with his prosthesis. Ar. 706, 713.
- January 2021 he was advised to stay off the prosthesis as much as possible due to swelling and sores. Ar. 687, 695, 699.

Br. at 8.

Defendant, by contrast, cites various visit notes reflecting the prosthesis fit adequately:

- February 12, 2019 visit "Pt stated prosthesis was comfortable and Supportive." AR 378
- February 25, 2019 visit "Pt ambulated in prosthesis and stated it felt much better" AR 379
- March 4, 2019 visit, "Pt is doing very well and stated that he is getting more and more used to [prosthesis] everyday. Pt stated no pain is present and he star[t]s work on Monday 3/11/19" AR 380.
- March 25, 2019 visit, "Pt is doing well," "pt ambulated. He stated socket fel much better and no longer feels movement at the distal end," and "Pt successfully ran/performed his trot without holding onto bars. Patient is doing great" AR 381.
- June 12, 2019 visit, "pt stated socket was comfortabl[e] and supportive" AR 386.
- June 20, 2019 visit, "Pt ambulated and stated that [prosthetic] felt 100x's better." AR 374.

- July 2, 2019 visit, "Pt is doing well. Pt had a good time at his wedding last week. He stated the prosthesis is doing well." AR 387.
- August 2019 visit, "Pt doing well with no reported issues at this time" and "Pt stated everything feels comfortable." AR 390.
- January 15, 2020, "Pt is doing well, but was riding quads last week and flipped the quad and tore a large hole into his suspension sleeve" and after adjustments "Pt ambulated and stated padding felt great." AR 392.
- March 2020 visit, prosthetic device marked as "comfortable and functional" AR 393.
- February 21, 2021 visits, "Patient to continue use of right lower leg prosthesis" AR 697.
- September 2020 visit, despite inappropriate fit with prosthetic because of "residual limb change. Patient is keeping physically active by playing sports and has recently started working construction." AR 715–16.

The first 8 of Defendant's 12 citations are to records predating the relevant period which is demarcated as the period between alleged disability onset date of September 2, 2019 and the ALJ's decision date of January 6, 2021.

Shifting focus to the records within the relevant period, both parties cite the January 15, 2020 visit note (duplicated in the record at AR 318 and 392) underscoring the facts that support their view while overlooking the facts that detract from it. It reflects: 1) Plaintiff tore a hole in his suspension sleeve while riding quads; 2) his prosthetic was moving around and needed more padding; and, 3) after padding was adjusted he ambulated with the prosthetic and "stated padding felt great." AR 318, 392.

The same is true of the March 5, 2020 visit note. On the one hand, it reflects that "Pt has been taking it easy and not wearing his prosthesis as much and wearing his shrinker more often. Informed patient that he was doing the right things and to keep at it."[3] AR 316, 393. On the other hand, the provider checked a box indicating the prosthetic device was comfortable and functional. *Id.*

---

[3] This does not exactly state, as Plaintiff contends, that Plaintiff "was advised not to wear his prosthesis due to the swelling," but the visit note supports that inference given Plaintiff stated (among other things) that he was not wearing it due to the swelling and the provider affirmed generally "he was doing the right things and to keep at it." *Id.*

11

Similarly, as Plaintiff emphasizes, a September 2020 visit note reflects he complained of complications with the fit of his prosthetic due to limb shrinkage, despite use of padding and thick socks. Ar. 715-16.  As Defendant emphasizes however, the September 2020 visit note also reflects he was staying active despite issues with the prosthetic fit: "Patient's fit is currently inappropriate due to residual limb change. Patient is keeping physically active by playing sports . . ." *Id.*

Finally, as Plaintiff underscores, in January 2021 he was advised to stay off the prosthesis as much as possible due to swelling and sores (AR. 687, 695, 699), but as Defendant notes, by the following month the record reflects "Patient to continue use of right lower leg prosthesis" AR 697.

Defendant appeals to the general principle that, where the record could support more than one rational interpretation, deference to the ALJ is appropriate. Resp. at 7 (citing *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021)).  Plaintiff counters that it is Defendant, and not the ALJ, offering the interpretation of the evidence, which constitutes impermissible post-hoc rationalization. Reply at 4 *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009).

The ALJ's pertinent discussion noted as follows:

> Over time, especially during 2020, the claimant experienced problems with the prosthesis that had arisen due to injuries sustained while falling when not using his device (8F/7). However, in early 2020 the claimant's activities indicate that he was comfortable in utilizing his prosthesis in pursuing physical activities. For example, he tore a hole in the suspension sleeve of the device when [sic] writing a quad and flipping it (4F).

The ALJ appropriately acknowledged the records indicating issues with his prosthetic throughout 2020, but that he nevertheless remained active.  Though the ALJ's generalized citations (Ex. 4F and 6F) were not as ideal as pin citations, this is not a harmful error where the ALJ accurately described the content of the records in question.  Plaintiff asserts that the ALJ's finding was "not grounded in the evidence" but does not acknowledge the ALJ's discussion of the quad riding incident.  Further, the first example Plaintiff cites to illustrate his view of the evidence was the January 2020 treatment note, the same one describing the quad riding incident.  AR 318.

Although the ALJ's finding was limited to Plaintiff's activity level as of "early 2020," Defendant did not engage in post-hoc rationalization by citing an additional example of the same phenomenon, namely the September 2020 treatment note indicating he was keeping active playing sports despite issues with the fit of his prosthetic. AR 715-16. Indeed, Plaintiff cites the same record for a different proposition, namely that he was experiencing bottoming out of the prosthetic despite padding and thick socks. The ALJ did not deny that Plaintiff experienced issues with the fit of his prosthetic, but found Plaintiff was nevertheless comfortable with physical activity. Substantial evidence therefore supports that finding, and supports the related finding in the RFC that Plaintiff could perform a minimum 2 hours of standing and walking in an 8-hour day with up to occasional performance of postural activities.

### VI.     Conclusion and Remand for Further Proceedings

Remand is appropriate for the ALJ to properly address the moderate limitations regarding social interaction, incorporate them into the RFC, and pose them to the VE to determine their impact on the available jobs. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### VII.    Order

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion. Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment in favor of Plaintiff Alexander Jesse Ramirez and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **July 6, 2023**                    **/s/ Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE